**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ISADORE GARTRELL,<br><br>       *Plaintiff,*<br><br>   v.<br><br>FEDERAL BUREAU OF PRISONS;<br><br>HOWARD HUFFORD, individually and in his official capacity as warden of Federal Correctional Institution – Schuylkill;<br><br>JORGE CASTANEDA, individually and in his official capacity as associate warden (programs) of Federal Correctional Institution – Schuylkill;<br><br>MR. KRULESKI, individually and in his official capacity as associate warden (industries and education) of Federal Correctional Institution – Schuylkill;<br><br>MR. BRANDT, individually and in his official capacity as manager of UNICOR at Federal Correctional Institution – Schuylkill;<br><br>T. R. SNIEZEK, individually and in his official capacity as former warden of Federal Correctional Institution – | **Document Filed Electronically**<br><br>Civil Action No.<br><br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, MONETARY DAMAGES AND ATTORNEYS' FEES;**<br><br>**DEMAND FOR A JURY TRIAL** |

Schuylkill; and

O.E. BROWN, in his official capacity as chaplain of Federal Correctional Institution – Schuylkill,

*Defendants*.

# COMPLAINT

Comes now Plaintiff Isadore Gartrell, by and through his attorneys, and for his Complaint states as follows:

## NATURE OF ACTION

1.      Isadore Gartrell is a sincere adherent of the religion of Islam who is confined to the Federal Correctional Institution in Minersville, Pennsylvania ("FCI Schuylkill" or "prison").  One of the fundamental and central tenets of the Sunni Islamic faith requires followers to pray five times daily.

2.      A FCI Schuylkill policy—which designates only the chapel and individual cells as permissible spaces for Muslim prayer and forces all Muslims who need to pray during work hours to submit a request to leave work for one hour each day to return to their cells to pray (the "Muslim Prayer Policy")—precludes Mr. Gartrell from praying while he is at work or recreation.  The Muslim Prayer Policy violates the Religious Freedom Restoration Act because it places a substantial burden on Mr. Gartrell's free exercise of religion and does not further a compelling governmental interest.

3.      The Muslim Prayer Policy applies exclusively to Muslim inmates, and there are no similar policies in place for other religious groups, such as Christians.  Another FCI Schuylkill policy limits religious activity for all religious groups to specific designated locations—individual cells, the outdoor worship area, and the chapel (the "General Prayer Policy").  In spite of this General Prayer Policy, Defendants permit similarly situated religious groups to routinely pray in locations outside of the areas designated for religious activity, while penalizing Muslims for praying outside of their cells or the chapel.  By treating Mr. Gartrell differently from similarly situated religious groups, while acting under color of federal law, the Defendants have denied Mr. Gartrell equal protection of the laws, a right guaranteed by the Fifth Amendment of the United States Constitution.

4.      Mr. Gartrell seeks injunctive and declaratory relief  requesting that Defendants permit him to pray at work and recreation.  He also seeks nominal damages for the violation of his constitutionally-protected right to equal protection under the law.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under the laws of the United States pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1346(a)(2), which confer original jurisdiction on the United States District Courts.  This Court has

jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the request for monetary damages, as well. *See, e.g.*, *Davis v. Passman*, 442 U.S. 228 (1979); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391. Plaintiff Isadore Gartrell and Defendants are located in this District. The events giving rise to this action occurred in this District.

## **PARTIES**

7.      Plaintiff ISADORE GARTRELL is, and at all times pertinent was, an adult person confined at FCI Schuylkill. He is a sincere follower of the Sunni Islamic faith.

8.      Defendant FEDERAL BUREAU OF PRISONS ("BOP") is an agency of the United States Department of Justice ("DOJ"), an executive department of the United States government. The BOP is empowered by the DOJ to act through its governing body, officials, employees, and official bodies and to maintain the federal prison system.

9.      Defendant HOWARD HUFFORD is the warden of FCI Schuylkill in Minersville, Pennsylvania. As the warden, Defendant manages the day-to-day operations of FCI Schuylkill and executes its policies. He is sued in both his individual and official capacities.

10.    Defendant JORGE CASTANEDA is the associate warden of programs at FCI Schuylkill.  As an associate warden, Defendant manages the day-to-day operations of FCI Schuylkill and executes its policies.  He is specifically responsible for all activities related to religious services.  He is sued in both his individual and official capacities.

11.    Defendant MR. KRULESKI is the associate warden of industries and education at FCI Schuylkill.  As an associate warden, Defendant manages the day-to-day operations of FCI Schuylkill and executes its policies.  He is specifically responsible for all activities related to UNICOR and often supervises the work at UNICOR.  He is sued in both his individual and official capacities.

12.    Defendant MR. BRANDT is the factory manager of the UNICOR facility at FCI Schuylkill and Mr. Gartrell's supervisor.  He is sued in both his individual and official capacities.

13.    Defendant T. R. SNIEZEK is the former warden of FCI Schuylkill.  He was the warden of FCI Schuylkill until approximately April or May of 2010.  He is sued in both his individual and official capacities.

14.    Defendant O.E. BROWN is the chaplain at FCI Schuylkill.  He is responsible for religious practices and policies at FCI Schuylkill.  He is sued in his official capacity only.

## STATEMENT OF FACTS

### Plaintiff Isadore Gartrell's Need to Pray Five Times Each Day Is a Sincere Religious Belief

15.    Plaintiff Isadore Gartrell (Register #03473-000) is an adult

male within the custody of FCI Schuylkill in Minersville, Pennsylvania.

16.    Mr. Gartrell converted to Islam in 1990.  He is a practicing

Sunni Muslim and a sincere adherent of Sunni Islam.  As part of his religious

practice, Mr. Gartrell is required to pray five times each day.

17.    Following a central tenet of Islamic tradition, Mr. Gartrell

believes that the Qur'an commands followers of Islam to pray five times each day

during specific periods of time.  Mr. Gartrell adheres to the description of prayer,

or *salat*, in various *hadith* (reports by the Prophet Muhammad's companions of his

statements and actions) as the second pillar of Islam.  As such, prayer is one of

only five fundamental tenets of Islam.  According to the Qur'an, the purposes of

*salat* are to purify the supplicant by washing away sins and to restrain the

supplicant from engaging in immoral or unjust actions.  As a practicing Muslim,

Mr. Gartrell understands that *salat*, which means "connection," encourages the

believer to remember Allah, or God, as the source of all blessings.

18.    The *Sunnah*, a compilation of Islamic traditions and practices

taught by the Prophet Muhammad, prescribes the rules for engaging in *salat*, which

include performing daily prayers at specific times throughout the day.  The

schedule for *salat* changes throughout the year, as the periods for prayer are connected to the movement of the sun.

19.    The fact that the schedule of daily prayers overlaps with periods when an individual may be working, eating or sleeping underscores the role of prayer as an intentional reminder that Allah is present in everyday activities.

20.    Mr. Gartrell can complete one of the five daily sets of prayers within six minutes.

### Plaintiff Isadore Gartrell is Employed by UNICOR

21.    Mr. Gartrell is employed by UNICOR as a Quality Assurance Inspector of steel and fiberglass office cubicles.  Mr. Gartrell has worked at UNICOR since 1991, and he earns a gross monthly income of approximately $200.  Mr. Gartrell's income is important to him because he is working to repay a $1,200 loan, the principal of which he used to pay tuition to Asworth University to enroll in business management courses.

22.    As a UNICOR employee, Mr. Gartrell has had unique educational opportunities.  During his confinement, Mr. Gartrell has earned a degree in business management and completed a Department of Labor eighteen-month apprenticeship program in which he received training to become a Quality Assurance Inspector.  He was invited to join the apprenticeship program because of his employment at UNICOR.  Mr. Gartrell graduated from his apprenticeship

program with honors.  In addition to Mr. Gartrell's formal education, UNICOR has also taught him several technical skills.

23.    Mr. Gartrell values his employment with UNICOR not only as a source of income, but also because of the nonmonetary benefits, which include the opportunity to develop his social and interpersonal skills and enhance his sense of responsibility and self-sufficiency.  Mr. Gartrell would be deprived of important tangible and intangible benefits if he could not work at UNICOR.

24.    Mr. Gartrell typically works five days a week for seven and one half hours each day.  During each work day, Mr. Gartrell and other UNICOR employees are allotted a forty-five minute lunch break.  During the lunch break, the employees move to the dining hall, but they remain at the UNICOR facilities for the remainder of the work day.

### FCI Schuylkill's Policies Prevent Plaintiff from Praying Five Times a Day

25.    Prior to Defendant Mr. Sniezek becoming warden, FCI Schuylkill allowed Muslims to pray in any location, including at UNICOR.  This policy changed when Defendant Mr. Sniezek instituted the General Prayer Policy limiting the locations for religious activity, including prayer, to only three places: the chapel, the outdoor worship area and individual cells.  Under the General Prayer Policy, Mr. Gartrell could not pray at work or during recreation because he was not located in one of the designated areas for worship.

26.     Staff members at FCI Schuylkill enforced the General Prayer Policy against Mr. Gartrell and other Muslims.  For example, Mr. Gartrell's UNICOR supervisors, including Defendants Messrs. Brandt and Kruleski, denied Mr. Gartrell's requests to pray during his breaks, citing the General Prayer Policy as the reason for the denial.  On one occasion, Mr. Brandt informed Mr. Gartrell that he would have to find employment elsewhere if he wanted to pray at work.

27.     Other Muslims were disciplined for violating the General Prayer Policy regarding the designation of spaces for religious activities.  For example, on May 2, 2009, Mr. McBride (Register #42022-007), a Muslim man confined at FCI Schuylkill, was locked down in solitary confinement in the Special Housing Unit for praying outside of the designated areas for religious activity. Another Muslim, Mr. Bukhanan, was punished simply for requesting a BP-8 form for filing a grievance against the prison's policy that prevents him from praying at work.  He was strip searched and forced to pose for a series of photographs during the process.

28.     After Defendant Mr. Sniezek left FCI Schuylkill in April or May of 2010, he was replaced by Defendant Mr. Hufford.  After his arrival, Defendant Mr. Hufford continued to enforce the General Prayer Policy restricting the areas in which inmates can pray.

29.     On July 26, 2010, in an effort to remedy Mr. Gartrell's grievances, Mr. Gartrell's counsel sent a letter to Defendant Mr. Hufford, copying all of the other Defendants and counsel, demanding that Defendant Mr. Hufford permit Mr. Gartrell to pray at work and recreation (the "July 26, 2010 letter"). The letter also informed Defendant Mr. Hufford that, unlike members of other religious groups who pray at work and recreation, Mr. Gartrell was denied the same right to pray at work and recreation. Mr. Gartrell's counsel attached a copy of a draft complaint to the letter, and offered Defendant Mr. Hufford the opportunity to discuss Mr. Gartrell's grievances. Defendant Mr. Hufford did not respond to the July 26, 2010 letter.

30.     Some time after July 26, 2010, Defendant Mr. Hufford initiated a meeting with a few Muslim inmates and Mr. Gartrell in which he stated that he wanted to change the prison's policy regarding prayer. Defendant Mr. Hufford did not notify Mr. Gartrell's counsel that such a meeting would take place. Subsequent to the meeting, and without informing Mr. Gartrell's counsel, Defendant Mr. Kruleski demanded that Mr. Gartrell provide a list of all of the Muslims who work at UNICOR.

31.     Defendant Mr. Hufford did not hold any similar meetings with, or require a similar list identifying the Christian workers from, the Christians who are allowed to pray at UNICOR, recreation and the dining hall.

32.    Later, Defendant Mr. Hufford asked several Muslim inmates to submit proposals for the new prayer policy.  However, he did not afford Mr. Gartrell the opportunity to submit a proposal, and he did not notify Mr. Gartrell's counsel that he was seeking proposals.

33.    On September 8, 2010, Mr. Gartrell's counsel sent a second letter to Defendant Mr. Hufford, copying the other Defendants and counsel (the "September 8, 2010 letter").  In this letter, Mr. Gartrell's counsel requested a telephonic or in-person meeting with Defendant Mr. Hufford to discuss his meeting with Mr. Gartrell and the other inmates and potential changes to FCI Schuylkill's policy regarding religious activity.  Mr. Gartrell's counsel also informed Defendant Mr. Hufford that Mr. Gartrell does not endorse, or approve of, the policy proposals submitted by other Muslims because they do not address Mr. Gartrell's demands.  Again, Defendant Mr. Hufford did not respond to the September 8, 2010 letter.

34.    On September 10, 2010, Mr. Gartrell's counsel received a phone call from an attorney at FCI Allenwood stating that Defendant Mr. Hufford intended to release a new policy governing Muslim prayer.  Mr. Gartrell's counsel requested either a meeting with Defendant Mr. Hufford in advance of the implementation of the new policy or the opportunity to review and comment on a

draft of the policy.  Again, Defendant Mr. Hufford did not respond to counsel's requests.

35.    During that same September 10, 2010 call, counsel for FCI Allenwood acknowledged that the Defendants are aware that Christians are allowed to pray in locations outside of those places designated for religious activity.

36.    On September 16, 2010, Mr. Gartrell's counsel sent a third letter to Defendant Mr. Hufford, copying all of the other Defendants and counsel, proposing language for a new policy governing religious activity at FCI Schuylkill (the "September 16, 2010 letter").  Again, Defendant Mr. Hufford did not respond to the September 16, 2010 letter.

## FCI Schuylkill's Muslim Prayer Policy Is an Unduly and Highly Restrictive Means To Address Plaintiff's Need To Pray Five Times a Day

37.    On September 24, 2010, Defendant Mr. Hufford issued a memorandum instituting the Muslim Prayer Policy, which further restricts and violates the religious rights of Muslim inmates.  Defendant Mr. Hufford instituted this policy as a retaliatory and punitive measure against Mr. Gartrell for hiring counsel and asserting his legal rights against Defendants.  The Muslim Prayer Policy completely ignores Mr. Gartrell's proposal set forth in the September 16,

2010 letter.  Additionally, the Muslim Prayer Policy applies exclusively to Muslims—it does not address prayer by Christians or other religious groups.

38.    The Muslim Prayer Policy explicitly states that all Muslim inmate prayers must be conducted in individual cells or the chapel.  Under the General Prayer Policy, the designated locations for religious activity included three spaces:  individual cells, the chapel and the outdoor worship area.  Thus, the Muslim Prayer Policy reduces the number of locations where Muslims may pray from three to two spaces:  individual cells and the chapel.  Because the Muslim Prayer Policy applies exclusively to Muslims, under the General Prayer Policy, members of all other religions can continue to use the three designated spaces for prayer.

39.    The Muslim Prayer Policy also institutes a new procedure for the Muslim noon prayer that uses the FCI Schuylkill controlled (or open) movement procedure, which governs the movement of the men confined at FCI Schuylkill throughout the day.  Controlled movements occur every hour, beginning on the half hour, and last for ten minutes.  Men can move from one area to another only during these hourly ten-minute periods.  Once an individual arrives at a location, following a controlled movement period, he must remain there for at least one hour until the next controlled movement.  To request to move from one

location to another during a controlled movement, an individual must submit an Inmate Request to Staff asking to be placed on callout (a "cop-out").

40.  Pursuant to the Muslim Prayer Policy, a Muslim can submit a one-time cop-out to religious services by requesting to be placed on the daily callout to return to his cell from 12:30 p.m. to 1:30 p.m. in order to pray.

41.  The Muslim Prayer Policy places a substantial burden on Mr. Gartrell's free exercise of religion.  The periods for Islam's earliest and latest prayers each day occur while Mr. Gartrell is already confined to his cell. Generally, from Monday to Friday, the other three periods for prayer occur while Mr. Gartrell is away from his cell, and on some days, two of the prayer times occur while he is at work.

42.  The Muslim Prayer Policy does not account for the other prayer times when Mr. Gartrell is away from his cell.  If Mr. Gartrell were to utilize the controlled movement procedure to return to his cell for his daily prayers, he would miss between one and two hours of work each day, and he would be unable to work the number of hours expected by his employer.  Likewise, on days when Mr. Gartrell is not working at UNICOR, in order to adhere to FCI Schuylkill policies and still pray, he would have to give up two or three hours of recreation, a valuable and generally available benefit enjoyed by the men confined at FCI Schuylkill.

43.    The Muslim Prayer Policy does not represent the least restrictive means of accommodating Mr. Gartrell's free exercise of religion, because it requires Mr. Gartrell to leave work for a full hour, when one set of his five daily prayers only takes six minutes to complete.  If Mr. Gartrell utilized the cop-out method, he would lose one hour of wages each day, or approximately twenty dollars of income each month.

44.    The Muslim Prayer Policy states that a violation of the cop-out procedure (by being in an unauthorized area during the daily callout) may result in disciplinary action.  This amounts to penalizing an individual for engaging in religious activity according to his personal religious beliefs.

45.    FCI Schuylkill's policies and procedures relating to prayer require Mr. Gartrell to choose between (a) following the precepts of Islam by passing five hours each day in his cell or the chapel and forgoing the generally available benefits offered by work, school and recreation; and (b) giving up *salat* in order to work, attend recreation or school, study or eat.  Thus, it is impossible for Mr. Gartrell to both adhere to the FCI Schuylkill policies and exercise his religious beliefs by praying.

46.    But for the prison's current policies regarding prayer, Mr. Gartrell could pray during his breaks at work.  The length and timing of his breaks could easily accommodate any prayer times that occur during the work day.

47.    At other federal correctional institutions within the BOP, inmates do not need to move to designated areas in order to engage in prayer; rather, they are permitted to pray wherever they are, including the recreation grounds and work.  Before his arrival at FCI Schuylkill in April 2008, Mr. Gartrell was confined to the United States Penitentiary in Jonesville, Virginia ("USP Lee"). At USP Lee, Mr. Gartrell prayed freely during his breaks at the UNICOR worksite. In fact, at USP Lee, Mr. Gartrell could pray wherever and whenever he wanted.

48.    Other federal correctional institutions that do not limit religious activity to designated locations include the Federal Correctional Institution in White Deer, Pennsylvania ("FCI Allenwood"), the Federal Correctional Institution in Petersburg, Virginia ("FCI Petersburg"), the Federal Correctional Institution in El Reno, Oklahoma ("FCI El Reno"), the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"), the United States Penitentiary in Atlanta, Georgia ("USP Atlanta"), the United States Penitentiary in Bruceton Mills, West Virginia ("USP Hazelton"), and the United States Penitentiary in McCreary, Kentucky ("USP McCreary").

## While Acting Under Color of Federal Law, Defendants Treat Mr. Gartrell Differently from Similarly Situated Religious Groups

49.    Several of Mr. Gartrell's co-workers at UNICOR are Christians.  Like Mr. Gartrell, prayer is one way that these Christians practice their religion.

50.    At the UNICOR facility at FCI Schuylkill, a group of approximately seven Christians read from religious texts, hold hands, bow their heads, and recite prayers together at a table each morning and again after the lunch break.  Christians also routinely engage in group prayer sessions in the dining hall before eating and in other locations throughout the prison, including the recreation grounds.  Their prayers are conducted in open, conspicuous locations and are witnessed by members of the prison staff, including Defendants Messrs. Hufford, Castaneda, Kruleski and Brandt.

51.    When Christians pray at UNICOR, they do so in the presence of UNICOR supervisors, including Defendants Messrs. Brandt and Kruleski.  When Christians pray in the dining hall they do so within sight of prison staff, including Defendants Messrs. Castaneda, Kruleski, and Hufford.

52.    Defendant Mr. Hufford tours the facility almost daily and manages the operations of the prison.   He witnesses the daily activities of the inmates, including the Christians engaging in prayer.  Defendant Mr. Sniezek also toured the facilities almost daily and witnessed the Christians engaging in prayer.

53.    Defendants Messrs. Castaneda and Kruleski are aware of the activities of the men under their supervision because their management of the day-to-day operations of FCI Schuylkill includes visiting various areas of the prison.

54.    The July 26, 2010 letter notified all of the Defendants that Mr. Gartrell was being treated differently from the similarly situated Christians at FCI Schuylkill.

55.    While Defendants are aware that Christians routinely engage in prayer at work and recreation, they continue to deny Mr. Gartrell the same opportunities to pray.

56.    Defendants' enforcement of the Muslim Prayer Policy further exacerbates the unequal treatment between similarly situated Christians and Mr. Gartrell because it singles out Muslims and subjects them to a highly restrictive policy that is not applicable to other religions.  This policy forces Muslims who need to pray to leave work and return to their cells for a full hour.  The Muslim Prayer Policy is silent with regard to Christian prayer.  Thus, Christians who wish to pray are not subject to the same burden as Muslims who wish to pray.  Instead, Christians continue to pray at work, recreation and in the dining hall without any fear or risk of being subjected to discipline.

57.    Despite knowing that the Christians regularly engage in prayer in violation of prison policy, Defendants Messrs. Hufford, Castaneda, Kruleski, Sniezek and Brandt have deliberately chosen not to enforce the General Prayer Policy against the Christians, even as they enforce it against Mr. Gartrell and other Muslims.  While Christians already receive preferential treatment through such uneven enforcement, the Muslim Prayer Policy places additional burdens on Muslims' free exercise of religion and makes explicit the unequal treatment of Muslim inmates at FCI Schuylkill.

### Legal Violations

### Count One

**Violation of the Religious Freedom Restoration Act
"Substantial Burden on Religious Exercise"
(42 U.S.C. §§ 2000bb et seq.)**

58.    Paragraphs 1 through 57 are incorporated by reference as if set forth fully herein.

59.    Defendants have deprived, and continue to deprive, Mr. Gartrell of his right to the free exercise of religion, as secured by the Religious Freedom Restoration Act ("RFRA"), by unlawfully imposing a substantial burden on his religious exercise.

60.    Defendants' policies regarding religious activities and controlled movement require Mr. Gartrell to abandon his religious obligations

because the policies force Mr. Gartrell to choose between working, and receiving

the significant and valuable benefits associated therewith, and adhering to his

sincere religious beliefs.

61.    The prison's policies impose a substantial burden on Mr.

Gartrell's religious exercise, and the policies do not further a compelling

governmental interest.  Furthermore, even if the policies did further a compelling

governmental interest, they do not represent the least restrictive means to further

such interest.

## Count Two

### Violation of the Equal Protection Guarantee of the
### Fifth Amendment of the United States Constitution

62.    Paragraphs 1 through 57 are incorporated by reference as if set

forth fully herein.

63.    Defendants Messrs. Hufford, Castaneda, Kruleski,

Sniezek, and Brandt have deprived, and the current officials continue to

deprive, Mr. Gartrell of his right to equal protection of the laws, as

guaranteed by the Fifth Amendment of the United States Constitution, by

treating Mr. Gartrell differently from similarly situated religious groups,

such as his Christian co-workers at UNICOR.

64.    Under color of federal law, Defendants Messrs. Hufford,

Castaneda, Kruleski, Sniezek, and Brandt have discriminated against Mr. Gartrell

on the basis of his religion by precluding him from praying at work and requiring him to return to his cell to pray, while allowing his Christian co-workers to pray at work.

65.    Defendants' purposeful discrimination against Mr. Gartrell as a Muslim, while treating the Christians differently, is not rationally related to a legitimate government interest.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Isadore Gartrell respectfully requests that this Court grant the following relief:

(a)    A declaration that Defendants' failure to accommodate Plaintiff's need to pray five times daily, as required by his sincere religious beliefs, violates RFRA.

(b)    A declaration that Defendants Messrs. Hufford, Castaneda, Kruleski, Sniezek, and Brandt have denied Plaintiff's right to equal protection of laws, in violation of the Fifth Amendment of the United States Constitution.

(c)    A preliminary and permanent injunction requiring Defendants to accommodate Plaintiff's need to pray five times each day.

(d)    A preliminary and permanent injunction enjoining Defendants Messrs. Hufford, Castaneda, Kruleski, and Brandt from treating Plaintiff differently than similarly situated religious groups.

(e)    An award to Plaintiff of nominal damages and full costs and attorneys' fees

arising out of this litigation; and

(f)    Such other relief as this Court may deem just and appropriate.

## **DEMAND FOR JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

Isadore Gartrell hereby demands a trial by jury in this action of all issues so triable.

Respectfully submitted,

Dated:  October 20, 2010                Su Ming Yeh
                                        PENNSYLVANIA INSTITUTIONAL
                                        LAW PROJECT


                                        By:  s/Su Ming Yeh
                                        Su Ming Yeh (PA ID No. 95111)
                                        718 Arch Street Suite 304 South
                                        Philadelphia, PA 19106
                                        *Telephone:* (215) 925-2966
                                        *Facsimile:* (215) 925-5337
                                        smyeh@pailp.org

                                        *Attorney for Plaintiff Isadore Gartrell*